|     |     |     |
| --- | --- | --- |
| 1   |     |     |
| 2   |     |     |
| 3   |     |     |
| 4   | **E-FILED on     9/27/06** |     |
| 5   |     |     |
| 6   |     |     |
| 7   |     |     |
| 8   | IN THE UNITED STATES DISTRICT COURT |     |
| 9   | FOR THE NORTHERN DISTRICT OF CALIFORNIA |     |
| 10  | SAN JOSE DIVISION |     |

| | | |
|---|---|---|
| 12 | EDWARD C. HOLBROOK, | No. C-05-00057 RMW |
| 13 | Plaintiff, | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR REMAND |
| 14 | v. | |
| 15 | JO ANNE B. BARNHART, | |
| 16 | Defendant. | **[Re Docket Nos. 13, 14]** |

Plaintiff Edward C. Holbrook ("Holbrook") brings this action under 42 U.S.C. § 405(g) to obtain review of the Commissioner's decision denying his claim for Supplemental Security Income ("SSI") benefits. On December 23, 2002, Holbrook filed a claim for benefits, alleging that he became disabled on November 1, 2002 due to lower back pain. Administrative Transcript ("Tr.") 102. The Social Security Administration ("SSA") denied Holbrook's application and his request for reconsideration. Tr. 72-80. An Administrative Law Judge ("ALJ") held a hearing on December 16, 2003. Tr. 25. On January 16, 2004, the ALJ denied Holbrook's claim. Tr. 14-24. Holbrook's request for review by the SSA Appeals Council was denied. Tr. 5-8. Holbrook appeals to this court, claiming that the ALJ erred in adopting an examining physician's opinion over Holbrook's treating physician's opinion. The parties have each filed motions for summary judgment. For the reasons set

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR REMAND—C-05-00057 RMW
EO/SPT

forth below, the court GRANTS the Commissioner's motion for summary judgment and DENIES plaintiff's motion for summary judgment or remand.

## I. BACKGROUND

**A.   Claimant's Vocational and Medical History**

Holbrook was approximately forty-two years old at the time he applied for SSI benefits. Tr. 87. He dropped out of high school after completing the eleventh grade. Tr. 92-101. Holbrook worked as a flooring installer from 1977 to September 2000 and from June 2, 2002[1] until October 31, 2002 when he allegedly became disabled as a result of lower back pain. Tr. 50; 93; 109-110.

On February 17, 2003, Holbrook was examined by Lakshmi Neena Madireddi, M.D., consulting physician for the Disability Determination Service ("DDS"). Tr. 19; Tr. 158-159. Holbrook reported that it was difficult for him to lift and carry more than twenty pounds. Tr. 158. He also claimed that he could sit, stand and walk for an hour; that he was not taking any medications at that time; that he had suffered a crushed disc in his back when he was eighteen years old; and that the back pain from that injury had improved and been resolved at that time. *Id.* Dr. Madireddi noted "[s]light tenderness . . . on palpation of the lower lumbar paraspinous muscles," and a limitation on Holbrook's ability to bend to the right, which was 50% of normal. Tr. 158. Dr. Madireddi concluded that Holbrook's cervical spine, upper extremities, thoracolumbar spine, lower extremities and functional abilities were normal. *Id.* Dr. Madireddi diagnosed Holbrook with chronic lumbar pain and opined that he could sit for six hours cumulatively, stand and walk six hours cumulatively, and should avoid stooping, crouching, and crawling due to the pain in his spine. Tr. 159. Dr. Madireddi also concluded that Holbrook had no limitations on pushing, pulling, reaching, feeling, fingering or handling and noted no restrictions with respect to Holbrook's speech or hearing. *Id.*

On March 15, 2003, Holbrook had a spine x-ray performed by Karl Nguyen, M.D., which showed a disc space narrowing at the L5-S1 level and no fracture or dislocation. Tr. 160. Dr. Nguyen concluded the x-tray shows that Holbrook's lumbar alignment was normal; "[t]he disc

---

[1]   Holbrook was incarcerated from September 2000 until June 2, 2002. Tr. 50.

spaces, pedicles and vertebral body heights [were] preserved"; and there was "no fracture or dislocation." *Id.*

On March 27, 2003, Holbrook sought treatment at the South Valley Clinic for lower back pain of approximately four months' duration. Mr. Holbrook was examined by Shoshana Helman, M.D., who determined that Holbrook had a reduced ability to bend to the right and scoliosis of the back. Dr. Helman diagnosed Holbrook as having lower back pain and ordered a lower spine x-ray. Dr. Helman also prescribed Vioxx and recommended a follow-up appointment in two to three months for the back pain. Tr. 178-179.

On March 28, 2003, Holbrook had a lumbrosacral spine x-ray performed by Margaret Lee, M.D., as ordered by Dr. Helman. Tr. 172. Dr. Lee noted that the x-ray revealed: (1) mild straightening of the normal lordotic curve, "which may be secondary to spasm," (2) mild hypertropic changes to the lumbar spine, (3) mild narrowing of the L4-5 and L5-S1 disc spaces, (4) loss of height of the T12 vertebral body, and (5) the age of the compression fracture of T12 was indeterminate. *Id.* The findings revealed arthritic changes in the lower lumbar spine. *Id.*

On April 3, 2003, Dr. Patricia O'Neill, M.D., a medical consultant employed by the Commissioner, completed a Physical Residual Functional Capacity ("RFC") Assessment of Holbrook, apparently based on her review of medical and other evidence on file. *See* Tr. 163-170. Dr. O'Neill concluded that Holbrook could occasionally lift as much as fifty pounds, frequently lift as much as twenty-five pounds, sit, stand and walk for about six hours in an eight-hour work day, with normal breaks, and engage in unlimited pushing and pulling activities. Tr. 164. She further concluded that Holbrook could engage in activities involving frequent climbing, balancing, kneeling, crouching, and crawling frequently and stooping occasionally. Tr. 165. Dr. O'Neill noted that Holbrook complained of back pain since October 2002; but there was no injury. *Id.* Dr. O'Neill also noted that Holbrook alleges a crushed vertebra from an accident when he was eighteen; but an x-ray of the spine revealed a disc space narrowing at "L5-S" and no evidence of a crushed vertebra. *Id.* Dr. O'Neill observed that Holbrook had been diagnosed with fifty percent normal lateral bending on the right but otherwise had full lumbar range of motion. *Id.*

1    On May 28, 2003, Holbrook returned to South Valley Clinic, complaining of worsening back
2 pain and increased stiffness and requesting that his disability forms be completed.  Holbrook was
3 again examined by Dr. Helman.  Tr. 176.  Holbrook reported that he was attending a class once per
4 week.  In order to attend the class he had to drive continuously for four hours, at the end of which
5 time his back was reportedly "very painful."  *Id.*  During the examination,  Dr. Helman observed a
6 mild drift to the left in Holbrook's gait and tenderness over the lower thoracic vertebrae.  Tr. 176.
7 Dr. Helman diagnosed Holbrook as having thoracic back pain secondary to a T12 compression
8 fracture, which was aggravated by work.  *Id.*
9    On June 11, 2003, C. Eskander, M.D., a medical consultant employed by the Commissioner,
10 completed a RFC assessment for Holbrook.  Dr. Eskander indicated that Holbrook could
11 occasionally lift loads of up to twenty pounds and could frequently lift loads of up to ten pounds;
12 could stand and walk for up to six hours in an eight-hour work day; could sit for up to six hours in
13 an eight-hour work day; had no limitations on pushing or pulling within the stated weight limits; and
14 could engage in occasional climbing, stooping, kneeling, crouching and crawling.  Tr. 182-183.  Dr.
15 Eskander indicated that these findings were "significantly different" from other examining source
16 conclusions in Holbrook's file because his determinations were made with consideration of
17 Holbrook's March 28, 2003 spinal x-ray, which revealed the fracture in his T12 vertebra.  Tr. 187.
18    On October 2, 2003, Holbrook was again examined by Dr. Helman.  Holbrook claimed that
19 he drove continuously for four hours once per week, which resulted in "worse pain."  Tr. 191.  Dr.
20 Helman reiterated her earlier finding that Holbrook suffered from chronic thoracic back pain and
21 hypertension.  *Id.*  Upon discharge, Dr. Helman outlined a plan which included: (1) refilling
22 Holbrook's three existing medications (Vioxx, Tylenol and Flexeril), (2) adding a prescription for
23 Atenolol (which is used to treat hypertension), (3) scheduling a visit with a registered nurse within
24 three to four weeks for the back pain, and (4) scheduling a return visit for examination by a medical
25 doctor within six months.  *Id.*
26    In connection with her examination and treatment of Holbrook, Dr. Helman also completed
27 various forms upon Holbrook's request, indicating that Holbrook suffered from physical
28 impairments.  On May 28, 2003, Dr. Helman indicated on a Santa Clara County General Assistance

1  form that Holbrook suffered from severe thoracic back pain resulting from a compression fracture of
2  the T12 vertebra. Tr. 190. Dr. Helman summarized Holbrook's subjective claims as: "unable to sit
3  for [more than] 15 min[utes], unable to bend forward [and] kneel at all, unable to stand [more than]
4  30 min[utes]." *Id.* While Dr. Helman concluded that Holbrook's condition constituted a physical
5  disorder which limited his employability, she also opined that she did not expect the condition to last
6  for more than 12 months. *Id.* On July 14, 2003, Dr. Helman indicated on a "Verification of
7  Disability Form" for Gavilon College that Holbrook suffered from "thoracic back pain, due to MVA[2]
8  and T12 compression fracture" and that he should not engage in any lifting or bending and only
9  limited sitting and climbing. Tr. 189. On a General Assistance Program form dated October 2,
10 2003, Dr. Helman indicated that Holbrook suffered from back pain resulting from the T12 fracture
11 as the source of a "physical disorder . . . which limits his [] employability." Tr. 200. Dr. Helman
12 also indicated that, as a result, Holbrook was unable to lift more than ten pounds; was unable to push
13 or pull more than five pounds; was unable to sit for more than thirty minutes. Tr. 200.
14       On December 9, 2003, Dr. Helman signed an Application for Disabled Person Placard or
15 Plates for Holbrook on which she checked a box on the form indicating "[a] significant limitation in
16 the use of the lower extremities which substantially impairs or interferes with his mobility, or
17 requires the aid of an assistant device for mobility (e.g., cane, crutches, walker, etc.)," resulting from
18 the T12 compression fracture. Tr. 201. Dr. Helman therefore authorized Holbrook for a temporary
19 placard for six months. *Id.*
20       On September 8, 2004, Dr. Helman completed a Verification of Disability Form with the
21 Superior Court of California in connection with his child support case. Tr. 211. Dr. Helman
22 indicated that Holbrook could not work at his previous job as a result of a "T12 vertebral
23 compression fracture" and that the date at which he could return to work was "unknown." *Id.*
24       **B.    Procedural Background**
25       In a decision issued on January 16, 2004, the ALJ determined that Holbrook was not
26 disabled. Tr. 17-20. Claimant filed a request for review with the Appeals Council, and on
27 ─────────────
28   [2]   The term represented by this acronym is unclear from the record, but probably refers to "motor vehicle accident."

November 30, 2004, the Appeals Council denied his appeal, making the decision of the ALJ the final decision of the Commissioner. Tr. 5-7. This civil action followed.

## II.  LEGAL STANDARDS

### A.  Statutory and Regulatory Framework

To qualify for benefits under Title XVI of the Social Security Act, the claimant must establish that she has a disability. A disability will be found only if the individual's physical or mental impairment is so severe that he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The SSA has formulated regulations establishing a five-step sequential evaluation process to determine disability. *See* 20 C.F.R. § 416.920. If at any step the SSA makes a conclusion of disability or non-disability, the evaluation process terminates. *Id.* § 416.920(a)(4). The first step requires a consideration of a claimant's current work activity and a determination of non-disability if she is doing "substantial gainful activity." The second step calls for an evaluation of whether claimant suffers from a sever medically determinable impairment that meets the duration requirement of twelve months and a conclusion of non-disability if he does not. At the third step, the SSA assesses whether claimant's condition meets or equals any impairments on the SSA's predefined list of qualifying impairments[3] ("Listings") and must conclude she is disabled if it does. In the last two steps, the SSA assesses the claimant's Residual Functional Capacity. *Id.* § 416.920(a)(4). RFC depends on the medical and other evidence in claimant's record and is used during the last two steps of determining plaintiff's ability to do her relevant previous work or other work. *Id.* § 416.920(e). In step four, the SSA determines whether the claimant can still perform his past relevant work. In the final step, so-called "vocational factors" of age, education and past work experience are also considered in determining whether claimant can transition to other work. *Id.* § 416.920(f); *see also Barnhart v. Thomas*, 124 S. Ct. 376, 379-380 (2003) (describing the five-step SSA process for determining disability).

---

[3] The "listing of impairments" is contained in 20 C.F.R. Pt. 404, Subpt. P, Appx. 1.

**B.  Scope of Review**

Under Social Security Act § 405(g), a district court reviewing the Commissioner's decision on an application for benefits may affirm, reverse, or remand. *See Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000) (citing *Ramirez v. Shalala*, 8 F.3d 1449, 1451 (9th Cir. 1993)).  The district court's scope of review is limited.  This court will not disturb the Commissioner's denial of disability benefits unless the Commissioner's findings of fact are not supported by substantial evidence or the Commissioner failed to apply the proper legal standard.  42 U.S.C. § 405(g); *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001); *Tackett v. Apfel*, 180 F.3d 1094, 1097-98 (9th Cir. 1999); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).

### III. ANALYSIS

The ALJ concluded Holbrook "has disc space narrowing at L5-S1; arthritis of the lower lumbar spine; and, a history of compression fracture at T-12" which are severe impairments within the meaning of the SSA Regulations.  The ALJ also concluded that Holbrook did not retain the RFC to perform his past relevant work.  However, the ALJ concluded that Holbrook was not disabled because Holbrook retains the RFC to perform other work existing in significant numbers in the national economy, namely, that Holbrook retains the capacity to perform a significant range of light work.  Holbrook contends that the ALJ erred in determining that he retained RFC to perform a significant range of light work because (1) the ALJ's decision that Holbrook's claims are not credible is not supported by substantial evidence and (2) the ALJ's discounting of the treating physician's opinion is not supported by substantial evidence.

**A.  Credibility of Claimant**

Holbrook takes issue with the ALJ's conclusion that his allegations are not credible.  Unless there is evidence of malingering, an ALJ must set forth "clear and convincing" reasons for rejecting the claimant's testimony:

> Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be "clear and convincing." General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.

*Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (internal quotations and citations omitted); *see also Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186, *4.

Here, there is no dispute that Holbrook suffered specific severe impairments. No one asserts he was malingering. In discrediting Holbrook's allegations as to the severity of the pain, the opinion sets forth Holbrook's testimony followed by an enumeration of discrepancies between the claimant's assertions and (1) the degree of treatment and medications sought and obtained, (2) the diagnostic tests and findings from examinations, (3) the findings of the consulting examiners, (4) the level of follow-up treatment ordered by treating physicians, and (5) the level of diagnostic testing ordered by treating physicians. Thus, the ALJ pointed to clear and convincing reasons for discounting Holbrook's assertions of disabling pain.

Specifically, the ALJ found that Holbrook's claims are inconsistent with the sporadic treatment he sought—the record indicates he saw a medical doctor on February 17, 2003, March 27, 2003, May 28, 2003, and October 2, 2003—the level of diagnostic tests prescribed (two x-rays), and the level of follow-up treatment ordered. For example, after her latest examination of Holbrook, Dr. Helman scheduled a follow-up examination by a medical doctor six months later. The ALJ noted that the doctors did not prescribe and Holbrook did not request stronger pain killers that might be more consistent with the immobilizing pain asserted by Holbrook. In addition, the level of pain described by Holbrook is further contradicted by the findings in the x-rays or the conclusions of the consultant examiners. Here, the medical consultants found that although Holbrook suffered some physical limitations and a fracture in his T12 vertebra, he was capable of occasionally lifting loads of up to twenty pounds, frequently lifting up to ten pounds, stand and walk for up to six hours in an eight-hour work day, sit for up to six hours in an eight-hour work day, and could engage in occasional climbing, stooping, kneeling, crouching, and crawling. Based on the record and the reasons set forth by the ALJ, the ALJ's conclusion to discount Holbrook's claims of disabling pain is

supported by substantial evidence.

## B.  Treating Physician Opinions

Holbrook also argues that the ALJ erred in rejecting the opinion of his treating physician, Dr. Helman, in favor of the opinions of Dr. Madireddi, an examining physician, and Drs. O'Neill and Eskander, the medical consultants employed by the Commissioner.  Holbrook notes that according to Dr. Helman, he has not retained the RFC to perform any category of work, including sedentary work.

When faced with a conflict between the opinions of a treating physician and an examining physician, the ALJ generally should give special consideration to the opinion of the treating physician. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).  The reason for affording such deference to the "treating physician is based not only on the fact that [she] is employed to cure but also on [her] greater opportunity to observe and know the patient as an individual." *Id.* at 502 (quoting *Bowman v. Heckler*, 706 F.2d 564, 568 (5th Cir. 1983)).  At the same time, a "treating physician's opinion is not . . . necessarily conclusive as to either a physical condition or the ultimate issue of disability." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  In particular, "the ALJ need not accept a treating physician's opinion which is brief and conclusionary in form with little in the way of clinical findings to support [its] conclusion." *Id.* (citing *Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986)) (internal quotations omitted).  Moreover, it is the province of the ALJ and not the court to resolve conflicts and ambiguities in the medical and non-medical evidence. *Id.* at 750.

The ALJ may reject the treating physician's opinion in favor of that of an examining physician, provided that she articulates specific, legitimate reasons for doing so which are based on substantial evidence in the record. *Id.* (quoting *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987)).  "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating [her] interpretation thereof and making findings." *Id.* (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).  However, "the ALJ must do more than offer [her] conclusions.  [She] must set forth [her] own interpretations and explain why they, rather than the doctors', are correct. *Reddick*, 157 F.3d at 725.

Here, the ALJ explained why she accorded "little weight" to Dr. Helman's opinions:

> The undersigned gives little weight to Dr. Helman's above-noted opinions, as they are not consistent with the medical record as a whole, or with the doctor's own examination and treatment notes, or with the above-noted examination by Dr. Madireddi, or with the claimant's own report to Dr. Madireddi (for example, he reported that he had difficulty lifting over twenty pounds). The objective laboratory reports and [x]-rays in this matter are not consistent with the extremely reduced level of activity described by the doctor. It is noted that the record does not indicate any prescription for the level of pain killers that might be expected with a person so immobilized by pain, and there is no evidence in the record to indicate that the doctor has recommended surgical intervention. This is inconsistent with the level of incapacity in the doctor's opinion. On the whole, the doctor appears to have accepted the claimant's subjective complaints, and the above-noted opinions appear reflective of a position of "advocate" for the patient.

Tr. 20. Thus, in according Dr. Helman's opinions little weight, the ALJ noted that Dr. Helman's conclusion that Holbrook has an "extremely reduced level of activity" is not consistent with the level of diagnostic testing, treatment, and follow-up that she ordered after examining Holbrook. The record indicates that the only diagnostic testing ordered by Dr. Helman after examining Holbrook was an x-ray. The x-tray noted only "mild" straightening of the normal lordotic curve, "mild" hypertropic changes in the lumber spine, and "mild" narrowing of the L4-5 and L5-S1 disc spaces. The x-ray also revealed an old compression fracture which could not be dated. Dr. Helman concluded to refill Holbrook's existing prescriptions for Tylenol, Vioxx, and Flexeril, which the ALJ found are not indicative of the "level of pain killers that might be expected with a person so immobilized by pain." In addition, after examining Holbrook, Dr. Helman scheduled a follow-up visit for six months later.

The ALJ further noted that Dr. Helman's opinion that Holbrook suffers from an extremely reduced level of activity is based primarily on Holbrook's own subjective claims and otherwise not consistent with the medical evidence. In particular, Dr. Helman describes Holbrook's functional limitations not in her medical treatment notes, but in two General Assistance Program forms she completed on behalf of Holbrook. In the May 28, 2003 form she notes that Holbrook could not sit for more than fifteen minutes, was unable to bend forward and kneel at all, was unable to stand for

more than thirty minutes, and that the disability is expected to last less than twelve months.[4]  In the October 2, 2003 form she indicates different limitations, namely, that Holbrook states he is unable to lift ten pounds, unable to stand for more than one hour, unable to sit for more than thirty minutes, and unable to pull or push five pounds.  In this form, Dr. Helman indicates that the disability is expected to last more than twelve months.  First, as indicated in both forms the stated physical and functional limitations were summaries based on the claimant's own statements of his abilities and inabilities rather than from Dr. Helman's own examination or objective testing.  *See* Tr. 190, 200.  Second, in both forms, Dr. Helman indicates that the evidence of the limitations is an x-ray and physical examination.  The last x-ray was performed in March 2003, before either of the forms were completed.  However, there is no explanation why the limitations and expected duration of disability described in the two forms—completed just over four months apart and without additional objective testing—differ.  Rather, as the ALJ notes, Dr. Helman's treatment notes and the x-ray findings do not support this level of limitations and Holbrook's statement to Dr. Madireddi that he has trouble lifting over twenty pounds contradicts the statements made on these forms.  Therefore, the ALJ's conclusion that Dr. Helman appears to have accepted Holbrook's subjective complaints is supported by substantial evidence.

### III.  ORDER

For the foregoing reasons, the court GRANTS the Commissioner's motion for summary judgment and DENIES plaintiff's motion for summary judgment or remand.

DATED:      9/26/06                              *Ronald M Whyte*
                                                 RONALD M. WHYTE
                                                 United States District Judge

---

[4] Notably, impairments that are not expected to last more than twelve months would preclude a finding of disability for purposes of determining SSI benefits.

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiff(s):**

Kevin Thurber          thurberlaw@sbcglobal.net

**Counsel for Defendant(s):**

Elizabeth Firer        elizabeth.firer@ssa.gov

Sara Winslow           sara.winslow@usdoj.gov

Each party's counsel is responsible for ensuring that co-counsel receives a copy of this order if co-counsel has not registered for e-filing pursuant to the courts CM/ECF program.

**Dated:** 9/27/06                                          SPT
                                              **Chambers of Judge Whyte**